[3 NYS3d 267]

In the Matter of GERBER PRODUCTS COMPANY, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents.

Supreme Court, Albany County, August 21, 2014

**APPEARANCES OF COUNSEL**

*McNamee, Lochner, Titus & Williams, P.C.*, Albany (*David J. Wukitsch* of counsel), for petitioner.

*Eric T. Schneiderman, Attorney General*, Albany (*Richard Lombardo* of counsel), for respondents.

### OPINION OF THE COURT

GLEN T. BRUENING, J.

The Special Supplemental Nutrition Program for Women, Infants, and Children (WIC) is a federally funded program providing supplemental foods and nutrition education to eligible low-income women, infants, and children (*see* 42 USC § 1786 [a]). In New York, WIC is administered by the New York State Department of Health (DOH) (*see* Public Health Law § 700), which is charged with, among other things, identifying supplemental food brands that are acceptable for use in the WIC program, i.e., that WIC participants can purchase with WIC funds from approved vendors (*see* 7 CFR 246.10 [b] [2] [i]). In addition to the applicable federal requirements, New York State may establish criteria for the selection of supplemental foods, including, but not be limited to, other nutritional standards, competitive cost, statewide availability, and participant appeal (*see* 7 CFR 246.10 [b] [1] [i]).

Each year, the DOH prints an "Acceptable Foods Card" which sets forth the WIC-approved brands and, in 2009, baby food—both meat and fruits and vegetables—were included as products that WIC participants could purchase. From 2009 through 2013, petitioner and Beech-Nut were the only two baby food manufacturers included on the WIC Acceptable Foods Cards. In 2012, for the stated purpose of cost-containment, the DOH issued a request for information (RFI) to all WIC manufacturers. By determination dated November 26, 2013, respondents removed petitioner's baby food products from the WIC 2014 Acceptable Foods Card, leaving Beech-Nut as the only baby food manufacturer participating in the WIC program. In rendering that determination, respondents stated that

> "[t]he selection process for the proposed 2014 Food Card included the assessment of a variety of criteria, including but not limited to, federal standards, state requirements, availability in the retail marketplace, geographic availability, participant preferences, cultural requirements, and cost and nutrient profiles relative to other products within the same food type" (petition, exhibit F).

Petitioner commenced this CPLR article 78 proceeding seeking, among other things, to annul respondents' determination

to remove petitioner's baby food products from the WIC 2014 Acceptable Foods Card. Respondents oppose the petition and submit, among other things, the affidavit of Loretta A. Santilli, the director of the DOH Division of Nutrition, who states, among other things, that an analysis of the 2011 WIC redemption information and both petitioner's and Beech-Nut's 2012 response to the RFI revealed that

> "if the State included both Beech-Nut and petitioner among its approved baby food manufacturers in the 2014 Acceptable Foods Card and the WIC participants purchased half of their baby food from Beech-Nut and the other half from petitioner, the cost would be approximately $1.87 million more than the cost of WIC participants purchasing only Beech-Nut baby food" (aff of Loretta A. Santilli ¶ 38).

Respondents also contend that Beech-Nut offers more fruit and vegetable choices than petitioner. Based on the cost savings and Beech-Nut's product variety, Ms. Santilli states that respondents determined to include Beech-Nut as the only approved baby food manufacturer on the 2014 Acceptable Foods Card.

Petitioner now seeks leave of court to engage in limited discovery pursuant to CPLR 408 to uncover the factual basis for respondents' conclusions, contending that respondents have failed to indicate what specific data was relied upon in rendering the determination. Petitioner also questions respondents' motive for removing petitioner from the 2014 Acceptable Foods Card and seeks unredacted copies of emails exchanged between Beech-Nut and respondents.[1] Specifically, petitioner seeks the following:

---

**1.** Petitioner notes that New York State has subsidized the construction of a new Beech-Nut facility in Florida, New York. The records reflects that Beech-Nut's original RFI priced some of its fruits and vegetables at 55¢ per four-ounce jar and some ("Stage 2½" line of fruits and vegetables) at 63¢ per four-ounce jar, while petitioner's original RFI priced its fruits and vegetables at 73¢ per four-ounce jar (see aff of Loretta A. Santilli, exhibits C, D). Beech-Nut's original RFI priced its meat-based baby food at 95¢ per 2.5-ounce jar, while petitioner's RFI priced its meat-based baby food at $1.17 per 2.5-ounce jar. After submission of the RFI, Beech-Nut contacted respondents via email and either eliminated or "restaged" and reduced the price per jar of its Stage 2½ line of fruits and vegetables. Respondent submits that none of these changes impacted the statewide retail price for Beech-Nut fruits and vegetables (see aff of Loretta A. Santilli n 7).

*"Document Demand*

"a. documents pertaining to any independent research conducted by the DOH to confirm the information submitted in response to the Request for Information ('RFI') including, but not limited to, surveys by State or surveys of WIC staff;

"b. documents which confirm whether or not DOH established a maximum allowed price for the products;

"c. copy of the memo from the DOH's Director of the Bureau of Supplemental Foods Program to the Executive Deputy Commissioner subject to an appropriate confidentiality stipulation;[2]

"d. unredacted version of e-mails between DOH and Beech-Nut.

*"Interrogatories*

"a. Did DOH conduct any independent research to confirm the information submitted in response to the RFI? If so, describe the research in detail.

"b. Describe the data the DOH relied upon to determine that the use of Beech-Nut products alone by WIC participants would save $1.87 million dollars.

"c. Did DOH establish a maximum allowable price for the products? If so, what was the basis for doing so? Provide information broken out by vendor category.

"d. During the last two years, have any WIC participants been refused benefits or placed on waiting lists for WIC services due solely to lack of funding? If so, please explain." (Affirmation of David J. Wukitsch, Esq., dated May 29, 2014, ¶ 13.)

Respondents oppose petitioner's motion, arguing that petitioner has not demonstrated a need for the discovery it seeks. Respondents contend that Ms. Santilli's affidavit, in which she explains the basis for respondents' determination, together with the documentation attached to her affidavit—including the RFI issued in 2012 and petitioner's and Beech-Nut's responses thereto, correspondence and redacted email exchanges between Beech-Nut and respondents, a one-page

---

2. Petitioner asserts that this memo contained the Bureau's recommendations regarding the 2014 Acceptable Foods Card and was not disclosed in conjunction with petitioner's Freedom of Information Law (Public Officers Law § 84 *et seq.* [hereinafter FOIL]) request.

chart purporting to summarize a cost analysis conducted by respondent, and the November 26, 2013 determination—are the documents relied upon by respondents in rendering the determination, which provide the court with ample basis to determine whether there is a rational basis for that determination.

In a CPLR article 78 proceeding, disclosure is available only by leave of court and, "[b]ecause discovery tends to prolong a case, and is therefore inconsistent with the summary nature of a special proceeding, discovery is granted only where it is demonstrated that there is need for such relief" (*Matter of Town of Pleasant Val. v New York State Bd. of Real Prop. Servs.*, 253 AD2d 8, 15 [2d Dept 1999]). "When leave of court is given, discovery takes place pursuant to CPLR 3101 (a), which provides generally that '[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action' " (*id.*, quoting CPLR 3101 [a]). Accordingly, disclosure is required "of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]).

In this matter, as no administrative hearing was conducted, respondents were not required to make specific findings of fact (*see Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd.*, 95 AD3d 1402, 1404 [3d Dept 2012]; *Matter of McPartland v McCoy*, 35 AD2d 641, 642 [3d Dept 1970]), and no formal hearing or record of its findings was required (*see Matter of Bowen v State Commn. of Correction*, 104 AD2d 238, 240 [3d Dept 1984]). However, since respondents' determination has been challenged by the instant proceeding, it is respondents' burden to demonstrate the existence of a rational basis for its determination (*see Matter of McPartland v McCoy*, 35 AD2d at 642). While Ms. Santilli's affidavit may provide some of the basis for the determination, it fails to explain the cost criteria respondents applied to the submissions it received from petitioner and Beech-Nut. While it appears that petitioner's products were priced higher than similar Beech-Nut products, there is no criterion against which the price differential can be compared. Certainly, some price differential should be expected wherever products from competing manufacturers are analyzed. Here, respondents determined that the price differential for four-ounce fruits and vegetables is 18¢

and for 2.5-ounce meat is 22¢.[3] However, the record fails to disclose the point at which any price differential is unacceptable.[4] Moreover, while the RFI uses the term "cost-effective," it does not define that term. Nor is there any indication in the record that only products from manufacturers with the lowest price are to be accepted, or that similar price differentials between manufacturers of other competing food types resulted in the disqualification of the higher priced product.

The information and data sought by petitioner, as itemized by petitioner's motion papers and as set forth above (see affirmation of David J. Wukitsch, Esq., dated May 29, 2014, ¶ 13), would address this deficiency in the record. And, as it is clearly relevant for the purposes of determinating whether respondents' actions were rational, it is discoverable.

In so holding, the court notes that respondents have not disputed that the memo from the DOH Director of the Bureau of Supplemental Foods Program to the Executive Deputy Commissioner exists, have not asserted that this memo is irrelevant to the prosecution of this action, and have not asserted that this memo is exempt from discovery. Instead, respondents argue that petitioner's challenge to the denial of its Freedom of Information Law request should have been addressed in a separate CPLR article 78 proceeding. However, a claimed exemption under FOIL does not preclude a party to litigation from seeking governmental records through CPLR article 31 disclosure devices (see Marten v Eden Park Health Servs., 250 AD2d 44, 47-48 [3d Dept 1998]). Likewise, respondents have not argued that the redacted portions of the communications between Beech-Nut and respondents are privileged or otherwise exempt from discovery.

Accordingly, petitioner's motion is granted and, within 30 days of the date of filing of this decision and order, petitioner shall serve its document demand and demands for interrogatories, as set forth above, on respondents, and responses thereto

3. Petitioner points out that the price differential is based on 2012 prices, nearly two years out of date by the time the 2014 Acceptable Foods Card was released. Nothing in the record indicates whether the 2012 prices remained the same in 2014.

4. Exhibit F attached to the affidavit of Loretta A. Santilli is a chart that estimates the program savings resulting from eliminating Gerber baby foods. There is no indication in the record that this chart was considered during the decision-making process or whether it was created in opposition to the petition. In any event, the record also fails to explain the bases for the assumptions behind the calculations.

will be served within the time provisions of the CPLR (*see* CPLR 3122, 3133), or by stipulation between the parties. Upon receipt of responses to its document demand and demand for interrogatories, petitioner is directed to contact the court so that a conference can be scheduled to set a new petition return date.